1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10

EDWARD ANTHONY ALLEN,

Plaintiff,

11

v.

12

WASHINGTON STATE PATROL, et al.,

13

Defendants.

14

CASE NO. C05-1665-JCC

ORDER

15

     This matter comes before the Court on a motion for summary judgment by Defendants

16

Washington State Patrol ("WSP") and Keith Jordan (collectively "Defendants") (Dkt. No. 24), Plaintiff's

17

Opposition (Dkt. No. 26), and Defendants' Reply (Dkt. No. 27).  Having considered the papers

18

submitted by all parties, the allegations in the complaint, and the record in this case, and finding oral

19

argument unnecessary, the Court hereby GRANTS IN PART and DENIES IN PART Defendants'

20

motion, as follows.

21

**I.     BACKGROUND AND FACTS**

22

     In July of 2002, Plaintiff Edward Allen was stopped by WSP Trooper Keith Jordan, allegedly

23

without reasonable suspicion.  Defendant Jordan administered roadside sobriety tests and a portable

24

breath test.  Plaintiff registered a blood/alcohol content 0.092 on the portable breath test, above the legal

25
26

ORDER – 1

1   limit of 0.08.  He admitted to having consumed one alcoholic beverage, but denies being intoxicated.

2       Defendant Jordan placed Plaintiff under arrest, allegedly without probable cause, on suspicion of

3   driving under the influence.  Defendant Jordan took Plaintiff to a nearby police station for further breath

4   analysis.  This time, Plaintiff's blood/alcohol content registered 0.139 and 0.140.  He was then issued a

5   citation for driving under the influence.  Ultimately, Plaintiff negotiated the driving under the influence

6   charge down to a negligent driving charge, to which he pled guilty on January 3, 2003.  His plea followed

7   a December 30, 2002 probable cause hearing before a magistrate, at which both Plaintiff and Defendant

8   Jordan testified.  As a result of the conviction, he had his driver's license temporarily revoked, served 10

9   days in jail, and was required to attend alcohol treatment for six months.

10      In May of 2003, Plaintiff received a letter from the Snohomish County Prosecuting Attorney,

11  informing him of their discovery that Defendant Jordan had routinely falsified his arrest reports and

12  stating that the case against Plaintiff was being dismissed with prejudice.  (Compl. ¶ 3.8.)

13      Plaintiff commenced the present suit by filing a complaint on October 3, 2005, alleging false arrest

14  and imprisonment by Defendant Jordan, wrongful deprivation of his constitutional rights in violation of

15  42 U.S.C. § 1983 by Defendant Jordan, negligent supervision and hiring by WSP, and negligent infliction

16  of emotional distress by WSP and Defendant Jordan.  (Compl. 3–5.)  On September 25, 2006, this Court

17  granted summary judgment on all claims as to Defendant WSP and Defendant Jordan in his official

18  capacity on the basis of sovereign immunity.  The Court also dismissed Plaintiff's state law claims of false

19  arrest and false imprisonment because the statutes of limitations had run.  However, the Court denied

20  summary judgment as to Plaintiff's state law claim of negligent infliction of emotional distress and his §

21  1983 claim against Defendant Jordan in his individual capacity.  Defendants now move for summary

22  judgment on these two remaining claims.

23  //

24  //

25  //

26  ORDER – 2

## II.    ANALYSIS

### A.    Legal Standard

Rule 56 of the Federal Rules of Civil Procedure governs summary judgment motions, and provides in relevant part, that "[t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).  In determining whether an issue of fact exists, the Court must view all evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986); *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996).  A genuine issue of material fact exists where there is sufficient evidence for a reasonable factfinder to find for the nonmoving party.  *Anderson*, 477 U.S. at 248.  The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Id.* at 251–52.  The moving party bears the burden of showing that there is no evidence which supports an element essential to the nonmovant's claim.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Once the movant has met this burden, the nonmoving party then must show that there is in fact a genuine issue for trial.  *Anderson*, 477 U.S. at 250.

### B.    Issue Preclusion

Defendants argue that this Court's Findings of Fact and Conclusions of Law in a related case—*Montero v. Washington State Patrol, et al.*, No. C05-1092-JCC (W.D. Wash.)—regarding Defendant Jordan's negligent, but not intentional, falsification of arrest reports generally and the Court's finding that Montero "failed to make the necessary showing that Jordan committed a wrong of constitutional proportions by knowingly and intentionally pulling over and arresting Montero without probable cause, falsifying the report describing Montero's arrest, and then perjuring himself at Montero's trial" (January 29, 2007 Order in C05-1092-JCC (Dkt. No. 67) 9) prevent Plaintiff from proceeding to

ORDER – 3

1  trial in the instant case.  Defendants are incorrect.  While the requirement of complete mutuality has

2  disappeared from collateral estoppel law, the Constitution does not allow assertion of defensive issue

3  preclusion against a plaintiff who did not participate in the first litigation.  The U.S. Supreme Court has

4  held that:

5      Some litigants—those who never appeared in a prior action—may not be collaterally
       estopped without litigating the issue.  They have never had a chance to present their
6      evidence and arguments on the claim.  Due process prohibits estopping them despite one
       or more existing adjudications of the identical issue which stand squarely against their
7      position.

8  *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation,* 402 U.S. 313, 329 (1971).  The

9  only way that Plaintiff could be bound by findings favorable to Defendants in *Montero* is if Plaintiff was a

10  party to—or in privity with a party to—the *Montero* litigation, in a position opposite Defendants.  *South*

11  *Cent. Bell Tel. Co. v. Alabama*, 526 U.S. 160, 167–68 (1999) (noting also that later plaintiffs' use of the

12  same counsel as earlier plaintiffs cannot put them on notice of possible preclusion).  Defendants'

13  conclusory assertions that the instant case is "identical" to *Montero* and that Plaintiff will present

14  evidence "identical" to Montero's are unavailing in the face of this constitutional principle.  Accordingly,

15  Defendants' victory in *Montero* is irrelevant to the instant case.

16      **C.    Federal Constitutional Claim**

17          Defendants argue that Plaintiff's § 1983 claim against Defendant Jordan in his individual capacity

18  must fail on its merits and, alternatively, that Defendant Jordan has qualified immunity.  Plaintiff's brief

19  confusingly states that this Court's prior summary judgment Order ruled "that Jordan's arguments

20  concerning sovereign immunity were unpersuasive, by denying his prior motion for summary judgment in

21  which he argued the same thing."[1]  First, the Court *granted* summary judgment on the basis of sovereign

22  _____

23          [1] Plaintiff's brief also asserts that Plaintiff's version of the facts "obviates a finder of fact to weigh
   the testimony of the Plaintiff and Defendant.  Defendant's summary judgment motion should therefore be
24  denied."  (Pl.'s Opp'n 2.)  Noting that this is the second time Plaintiff has misused the verb "obviate" in
   court filings, (*see* Pl.'s Opp'n to previous summary judgment motion (Dkt. No. 13) 6), the Court advises
25  Plaintiff's counsel to look up its meaning in the dictionary.  The Court doubts that Plaintiff's counsel

26  ORDER – 4

immunity.  (September 25, 2006 Order 3.)  Second, Defendant Jordan did not argue qualified immunity

before.  Third, the questions of sovereign immunity (resolved months ago as to claims against the State

and Defendant Jordan in his official capacity) and qualified immunity (argued here as to claims against

Defendant Jordan in his individual capacity) are quite different.  Despite Plaintiff's seeming conflation of

these principles, the Court makes the following findings.

To state a claim under 42 U.S.C. § 1983, Plaintiff must establish (1) "depriv[ation] of a right

secured by the Constitution or laws of the United States" and (2) that "the alleged deprivation was

committed under color of state law."  *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999).

No party disputes the existence of the second element—Defendant Jordan is a "state actor" for purposes

of § 1983.  Thus, the Court moves on to discuss the relevant alleged deprivation of Plaintiff's federal

rights and Defendant Jordan's claim of qualified immunity.

In the context of "government officials performing discretionary functions," as here, such officials

"generally are shielded from liability for civil damages insofar as their conduct does not violate clearly

established statutory or constitutional rights of which a reasonable person would have known."  *Harlow*

*v. Fitzgerald*, 457 U.S. 800, 818 (1982).  This "qualified immunity" is determined in two steps.  First, the

Court must consider the threshold question of whether, taken in the light most favorable to Plaintiff, the

facts alleged show that "the officer's conduct violated a constitutional right."  *Saucier v. Katz*, 533 U.S.

194, 201 (2001).  The Supreme Court has specified that:

> If no constitutional right would have been violated were the allegations established, there
> is no necessity for further inquiries concerning qualified immunity.  On the other hand, if a
> violation could be made out on a favorable view of the parties' submissions, the next,
> sequential step is to ask whether the right was clearly established.

*Id.*  The second step requires evaluation of the law in the "specific context of the case."  *Id.*  Accordingly,

this Court must determine (1) whether Plaintiff's facts, as alleged, could show violation of a

---

meant to contradict his opposition to summary judgment by stating that there is *no need* for a finder of
fact to weigh the evidence in this case.

ORDER – 5

1   constitutional right, and, if so, (2) whether such right was "clearly established" at the time of the incident.

2   Here, Plaintiff's § 1983 claim includes allegations that Defendant Jordan had no probable cause to

3   arrest him and no reasonable suspicion to stop him.  The Fourth Amendment protects a person's right to

4   be arrested only on probable cause and to be stopped only on reasonable suspicion.  *Beck v. Ohio*, 379

5   U.S. 89, 91 (1964) ("Whether that arrest was constitutionally valid depends . . . upon whether, at the

6   moment the arrest was made, the officers had probable cause to make it."); *Terry v. Ohio*, 392 U.S. 1

7   (1968) (finding that law enforcement officers must have at least a reasonable suspicion of criminal activity

8   before stopping a suspect).  "Reasonable suspicion requires specific, articulable facts which, together with

9   'objective and reasonable' inferences, form a basis for suspecting that a particular person is engaged in

10  criminal conduct." *United States v. Thomas*, 211 F.3d 1186, 1189 (9th Cir. 2000).  The probable cause

11  inquiry is more exacting than the test for reasonable suspicion.  *United States v. Sokolow*, 490 U.S. 1, 7

12  (1989) (citing *United States v. Montoya de Hernandez*, 473 U.S. 531, 541, 544 (1985)).  Probable cause

13  requires a finding that there exists a "fair probability that contraband or evidence of a crime will be found

14  in a particular place," *Illinois v. Gates*, 462 U.S. 213, 238 (1983), or information "sufficient to warrant a

15  prudent [person's belief] that the [arrested person] had committed or was committing an offense," *Beck

16  v. Ohio*, 379 U.S. 89, 91 (1964).  While the standards themselves are different, the probable cause

17  test—like the reasonable suspicion test—is dependent on an evaluation of the "totality of the

18  circumstances." *Gates*, 462 U.S. at 238.

19                    **1.      The Arrest**

20  The lawfulness of a state arrest by state police is to be determined by state law so long as the state

21  law is not inconsistent with the Constitution.  *Ponce v. Craven*, 409 F.2d 621, 625 (9th Cir. 1969); *see

22  also Bergstralh v. Lowe*, 504 F.2d 1276, 1277 (9th Cir. 1974).  Washington has adopted the position set

23  forth in section 667 of the *Restatement (Second) of Torts* that "the conviction of the accused by a

24  magistrate or trial court, although reversed by an appellate tribunal, conclusively establishes the existence

25  of probable cause, unless the conviction was obtained by fraud, perjury or other corrupt means." *Hanson

26  ORDER – 6

*v. City of Snohomish*, 852 P.2d 295, 298–99 (Wash. 1993) ("We now expressly hold that a conviction, although later reversed, is conclusive evidence of probable cause, unless that conviction was obtained by fraud, perjury or other corrupt means, or, of course, unless the ground for reversal was absence of probable cause."). While the rule set out in section 667 is applied primarily in the context of tort actions for malicious prosecution, nothing in *Hanson* indicates that it should be limited to those tort actions. In *Hanson*, the Washington Supreme Court held that the conviction of the plaintiff established probable cause as a matter of law not only for his claim of malicious prosecution, but also for his claims of false arrest and false imprisonment and his civil rights claim. *Id.* at 301; *see also Bergstralh*, 504 F.2d 1276 (applying the section 667 rule that conviction establishes probable cause in the context of a § 1983 action that alleged an arrest was without probable cause); *Doggett v. Perez*, 348 F. Supp. 2d 1198 (E.D. Wash. 2004) (applying the *Hanson* rule in the context of a § 1983 action alleging absence of probable cause); *but cf. Fondren v. Klickitat County*, 905 P.2d 928, 934 (Wash. Ct. App. 1995) (declining to dismiss plaintiff's § 1983 claim despite the application of the *Hanson* rule because the § 1983 claim alleged constitutional violations other than the absence of probable cause). To the extent that Plaintiff's § 1983 claim hinges on a finding that he was arrested without probable cause, the Court finds that *Hanson* is applicable.

It is uncontested that Plaintiff pled guilty. Under *Hanson*, despite that the case against him was later dismissed with prejudice, Plaintiff's conviction conclusively establishes probable cause for his arrest, *unless* Plaintiff can show that the conviction was obtained through fraud, perjury, or other corrupt practice. Defendants spend most of their briefing arguing that the probable cause hearing before the magistrate, after which Plaintiff pled guilty, conclusively establishes probable cause. However, Defendants' circular argument—that *because of* the plea and the magistrate's finding, there is no way Plaintiff can show "fraud, perjury, or other corrupt means"—ignores how the "unless" clause of the *Hanson* rule operates and mischaracterizes *Hanson*'s burden-shifting framework. Instead, upon acknowledging the effect of Plaintiff's conviction and plea and the findings of the magistrate at the

ORDER – 7

1  probable cause hearing (a presumption of probable cause), the focus must be on how Plaintiff may *rebut*

2  that probable cause presumption: by showing "fraud, perjury or other corrupt means."  If Plaintiff's facts,

3  if taken as true, can properly attack probable cause via a showing of fraud, perjury, or corruption, he has

4  alleged a constitutional violation.

5       Plaintiff has not only alleged that Defendant Jordan falsified his written reports regarding Plaintiff

6  (and others), he also alleges that Defendant Jordan perjured himself *at Plaintiff's probable cause*

7  *hearing*.  (*See* Pl.'s Ex. 2 (opposing previous summary judgment motion) (Dkt. No. 16) at 29–31.)

8  Moreover, Plaintiff testified in deposition that he pled guilty on the advice of counsel after Defendant

9  Jordan's alleged perjured testimony occurred and after being advised by counsel that it was "my word

10  against his and who do you think they'll believe."  (*Id.* at 18.)  Accordingly, probable cause is at issue

11  here.  Moreover, this Court has already ruled that these are questions of fact.  (September 25, 2006

12  Order 5.)  Taking Plaintiff's allegations as true, he has alleged a constitutional violation.

13       The second prong of the qualified immunity analysis—whether the right not to be arrested

14  without probable cause was clearly established when Defendant Jordan arrested Plaintiff in July of

15  2002—is satisfied as well.  If Plaintiff's alleged facts are true, he was not swerving, he had only had one

16  drink, and there was not even reasonable suspicion to stop him, much less probable cause to arrest.  Once

17  he was stopped, Plaintiff alleges that he performed fine on the field sobriety tests and did not admit at the

18  scene that he had been drinking.  Plaintiff also questions the accuracy of the tests administered to

19  determine his blood/alcohol content.  Defendants' briefing discusses caselaw that would show that, if

20  *Defendants*' facts are taken as true, Defendant Jordan likely had probable cause.  However, this is not the

21  inquiry.  Taking Plaintiff's facts as true, he was not intoxicated and showed no sign of being intoxicated,

22  so no probable cause existed.  A DUI arrest under these circumstances is clearly unconstitutional.  *Beck*,

23  379 U.S. 89; *United States v. Martin*, 509 F.2d 1211, 1213 (9th Cir. 1975) (both holding that warrantless

24  arrests require probable cause).  Accordingly, Defendant Jordan is not entitled to qualified immunity on

25  the arrest claim.  Plaintiff is entitled to proceed to trial to attempt to undermine the presumption of

26  ORDER – 8

1 probable cause by showing that his conviction was obtained through fraud, perjury, or corruption.

2          **2.      The Stop**

3          As noted *supra*, the lawfulness of a *Terry* stop depends on whether the officer had "reasonable

4 suspicion" that Plaintiff was intoxicated, which "requires specific, articulable facts which, together with

5 'objective and reasonable' inferences, form a basis for suspecting that a particular person is engaged in

6 criminal conduct." *Thomas*, 211 F.3d at 1189.  If Plaintiff has alleged facts that can show that there was

7 no reasonable suspicion to pull him over given the totality of the circumstances, he has alleged a

8 constitutional violation.  As noted *supra*, Plaintiff contends that he was not swerving or otherwise driving

9 in such a way that would indicate intoxication to a reasonable officer, and he had only consumed one

10 drink.  As with his behavior once he was stopped, these are questions of fact.  Taking Plaintiff's

11 allegations as true, he has alleged an unconstitutional *Terry* stop.

12          The second prong of the qualified immunity analysis—whether the right not to be stopped without

13 reasonable suspicion was clearly established when Defendant Jordan pulled Plaintiff over in July of

14 2002—is satisfied as well.  Again, Defendants' briefing discusses caselaw that would show that if

15 *Defendants*' facts are taken as true, Defendant Jordan likely had reasonable suspicion to make the stop.

16 However, this is not the inquiry.  Taking Plaintiff's facts as true, he was not intoxicated, was driving

17 within normal parameters, and was not weaving and, accordingly, no reasonable suspicion existed to stop

18 him.  Under these circumstances, an investigatory stop is clearly unconstitutional.  *Thomas*, 211 F.3d at

19 1189; *see also United States v. Colin*, 314 F.3d 439, 445–46 (9th Cir. 2003) (declaring unconstitutional a

20 stop when only a slight weave was observed for a short amount of time).  Accordingly, Defendant Jordan

21 is not entitled to qualified immunity as to the *Terry* stop.  Plaintiff is entitled to proceed to trial to attempt

22 to prove that no reasonable suspicion existed.

23          **D.      Negligent Infliction of Emotional Distress Claim**

24          The tort of negligent infliction of emotional distress ("NIED") has five elements under

25 Washington law: first, the plaintiff must prove the traditional elements of negligence—duty, breach,

26 ORDER – 9

1  proximate cause, and damage or injury. *Snyder v. Med. Serv. Corp.*, 35 P.3d 1158, 1164 (Wash. 2001).

2  In addition, the alleged injury must meet an "objective symptomatology" requirement, *Hunsley v. Giard*,

3  553 P.2d 1096, 1103 (Wash. 1976), by being both "susceptible to medical diagnosis and proved through

4  medical evidence," *Hegel v. McMahon*, 960 P.2d 424, 431 (Wash. 1998).

5        Plaintiff's claim of negligent infliction of emotional distress fails. Even if Plaintiff could show that

6  Defendant Jordan owed him a duty because his allegedly intentional conduct went beyond mere

7  negligence,[2] he has failed to produce *any* evidence in opposing summary judgment that could meet the

8  objective symptomatology requirement. *See Haubry v. Snow*, 31 P.3d 1186, 1193 (Wash. Ct. App.

9  2001) (holding that a trial court did not err in dismissing a negligent infliction of emotional distress claim

10  unsupported by medical evidence). Moreover, Plaintiff ignored the NIED claim entirely in his opposition

11  to the instant motion. In order to defeat a motion for summary judgment, the nonmoving party must

12  make more than conclusory allegations, speculations or argumentative assertions that material facts are in

13  dispute. *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 890 (9th Cir. 1994). Plaintiff's failure to produce

14  medical evidence, the lack of such evidence anywhere in the record, and Plaintiff's failure even to address

15  the NIED claim in opposing summary judgment are plainly insufficient under Washington law.

16  **III.   CONCLUSION**

17        For the foregoing reasons, Defendants' motion for summary judgment is DENIED as to Plaintiff's

18  § 1983 claim against Defendant Jordan in his individual capacity. Defendant Jordan is not entitled to

19  qualified immunity. However, Defendants' motion for summary judgment is GRANTED as to Plaintiff's

20

21        [2] In *Keates v. City of Vancouver*, 869 P.2d 88 (Wash. Ct. App. 1994), the Washington Court of
    Appeals reviewed a trial court's grant of summary judgment on a plaintiff's negligent infliction of

22  emotional distress claim against a police officer who aggressively questioned him while investigating the
    plaintiff's involvement in his wife's murder. The court noted that as a general rule, law enforcement

23  activities are not reachable in negligence and that plaintiffs seeking redress for emotional distress caused
    by being accused of a crime usually must prove the elements of malicious persecution. *Id.* at 94.

24  Accordingly, the court held that "police officers owe no duty to use reasonable care to avoid inadvertent
    infliction of emotional distress on the subjects of criminal investigations." *Id.* Under this standard, a

25  showing of negligence is insufficient to entitle Plaintiff to relief.

26  ORDER – 10

negligent infliction of emotional distress claim against Defendant Jordan in his individual capacity. Plaintiff's negligent infliction of emotional distress claim is DISMISSED with prejudice.  Accordingly, the only remaining claim for trial is Plaintiff's § 1983 claim against Defendant Jordan in his individual capacity, which alleges (1) an investigatory stop without reasonable suspicion in violation of the Fourth Amendment and (2) an arrest without probable cause in violation of the Fourth Amendment.

SO ORDERED this 17th day of April, 2007.

John C. Coughenour
United States District Judge

ORDER – 11